Blackwell Publishing, Inc. et al v. Continuing Education Unlimited, Inc. et al                                                                Doc. 1

UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2008 NOV 26 P 2: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

BLACKWELL PUBLISHING, INC.,　　　)
ELSEVIER, INC. and　　　　　　　　)
JOHN WILEY & SONS, INC.,　　　　　)
　　　　　　　　　　　　　　　　　 )
　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　 )
　　v.　　　　　　　　　　　　　　 )　　Civil Action No. _____
　　　　　　　　　　　　　　　　　 )
CONTINUING EDUCATION　　　　　　 )
UNLIMITED, INC. and　　　　　　　 )
DEBORAH L. BUCKLEY,　　　　　　　)
　　　　　　　　　　　　　　　　　 )
　　Defendants.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　 )

## COMPLAINT

This is an action for infringement of numerous copyrights belonging to plaintiffs, in violation of Title 17 of the U.S. Code and for false advertising in violation of Section 43(a) of the Lanham Act and state law. Plaintiffs complain of defendants as follows:

### Parties

1. Plaintiff Blackwell Publishing, Inc. ("Blackwell") is a Delaware corporation having its principal place of business at 350 Main Street, Malden, Massachusetts 02148. It is a subsidiary of Plaintiff John Wiley & Sons, Inc. It is engaged in the business of publishing books and journals in medicine and other fields, including but not limited to those specifically identified in this action.

2. Plaintiff Elsevier, Inc. ("Elsevier") is a business corporation organized and existing under the laws of New York, and having a place of business at 30 Corporate Drive, Suite 400, Burlington, Massachusetts 01803. It is engaged in the business of

Dockets.Justia.com

publishing scholarly books and journals in medicine and other fields, including but not limited to those specifically identified in this action.

3. Plaintiff John Wiley & Sons, Inc. ("Wiley") is a business corporation organized and existing under the laws of New York and having its principal place of business at 111 River Street, Hoboken, New Jersey 07030. It and its subsidiaries are engaged in the business of publishing books and journals in many fields, including but not limited to those specifically identified in this action.

4. Defendant Continuing Education Unlimited, Inc. ("CEU") is, according to plaintiffs' information and belief, a business corporation organized and existing under the laws of Florida with a principal address at 1413 14th Terrace, Palm Beach Gardens, FL 33418 and a mailing address at 6231 PGA Blvd. Suite 104, Palm Beach, Florida 33418. CEU provides continuing education courses for individuals in the medical field, including nurses and lab technicians, and has been engaged in the reproduction and distribution, for profit, of material published and owned by others, including but not limited to the plaintiffs in this action.

5. Defendant Deborah L. Buckley ("Buckley") is the registered agent for service of process for CEU at 1413 14th Terrace, Palm Beach Gardens, FL 33418.

6. Defendant Buckley is, according to plaintiffs' information and belief, the President and owner of defendant CEU, and thus has the power and authority to direct the actions of CEU and has a direct financial interest in the copyright infringement described in this Complaint.

## Jurisdiction and Venue

7. This Court has jurisdiction over the claims in this Complaint that arise from violation of Title 17 of the U.S. Code pursuant to 28 U.S.C. §1338(a).

8. This Court has jurisdiction over the Lanham Act count of this Complaint under 15 U.S.C. §1121 and 28 U.S.C. §1338 (a).

9. This Court has original jurisdiction over the state law false advertising count of this Complaint under 28 U.S.C. §1338(b).

10. This Court has personal jurisdiction over the defendants through their contact and business transactions within the state, including without limitation the advertisement and delivery into Massachusetts of the course materials identified in this action.

11. Venue is appropriate in this Court under 28 U.S.C.§1400(a), the statute governing venue in copyright cases.

## Facts

12. Plaintiff Blackwell publishes books and journals in many fields. Among its publications are those identified on Exhibit A to this Complaint as "Blackwell Items."

13. Plaintiff Elsevier and its affiliated companies in the U.S. and other countries among them publish thousands of scholarly books and journals in the English language alone, all of them in the sciences. Among its publications are those identified on Exhibit A to this Complaint as "Elsevier Items."

14. Plaintiff Wiley, together with its affiliated companies, publishes each year thousands of scholarly books and hundreds of scholarly journals in a number of fields, including but not limited to chemistry, physics, business, and certain social sciences.

Among its publications are those identified on Exhibit A to this Complaint as "Wiley Items."

15. The Blackwell Items, Elsevier Items and Wiley Items are sometimes referred to collectively hereinafter as the "Plaintiffs' Works."

16. The books that plaintiffs publish are written or edited by scholars in their respective fields. The journals that plaintiffs publish consist primarily of articles written by scholars in their respective fields and peer-reviewed by fellow scholars.

17. Each plaintiff, as a matter of standard practice, requires that the authors who write its books or contribute to its journals assign copyright to the publisher or grant the publisher exclusive rights of reproduction and distribution within the United States. This enables each plaintiff to seek out the greatest number of markets for the book, article or journal concerned and for its contents, thereby maximizing dissemination of the article, journal or book.

18. Specifically, but without limitation of the foregoing, Blackwell, Elsevier, and Wiley, or their respective predecessors in interest as the case may be, have, in connection with the books, articles and journals specifically named in this Complaint, secured transfers of copyright (either outright assignments or exclusive licenses) from the authors of the contents thereof.

19. Plaintiffs invest heavily in their book and journal publishing programs. Each year they incur substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of journal editorial offices.

20. The revenue from their respective publications represents the majority, in most cases the vast majority, of plaintiffs' respective annual revenues, and is therefore critical to their financial health.

21. Plaintiffs suffer serious financial injury if their copyrights are not respected. A substantial decline in their income could cause plaintiffs to cease publication of one or more deserving books or journals. This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving work.

22. In the case of infringed books, not only the publishers but also the authors receive income from such books, and depriving authors of that income can have serious repercussions for them and their work.

23. As part of their program of protecting their copyrights, plaintiffs routinely register their copyrights. The books and journal issues identified in this Complaint all bear copyright notice, and the plaintiffs' have registered copyright in all of them, as indicated on Exhibit A, with the exception of Blackwell's *British Journal of Dermatology* and *Mycoses*, which are non-U.S. works and therefore not required to be registered as a prerequisite to suit. *See* 17 U.S.C. § 411 (registration required only for "United States works," as such term is defined in 17 U.S.C. §101).

24. Defendant CEU is a commercial company that offers continuing education courses for individuals in the medical field, such as nurses and lab technicians.

25. In connection with such courses, defendants provide copies of individual articles from journals and excerpts from books for use in connection with a particular course. Such copies are referred to herein as the "Course Materials."

26. CEU's website, www.4ceuinc.com, describes the various courses it offers. See printout of defendants' website attached hereto as Exhibit B. Its catalog provides additional details regarding the types of courses, see catalog attached hereto as Exhibit C. Generally, customers who create an account with defendants are able to access Course Materials by having a hard copy or CD-ROM shipped to their home, or by accessing such materials online, depending on what type of course format the customer selects. See Exhibit C hereto.

27. A business such as CEU is required to arrange for permission to copy Course Materials that it reproduces in connection with a particular course. Frequently, such businesses do so through an independent agency known as Copyright Clearance Center, Inc. ("CCC"), of Danvers, Massachusetts.

28. In order to expand and facilitate the distribution of their publications and compliance with their copyrights, plaintiffs have licensed CCC, a non-profit intermediary, to authorize commercial photocopying of articles from plaintiffs' journals, or excerpts from plaintiffs' books. Any commercial entity such as CEU can comply with copyright by reporting its photocopying activities to CCC and paying a copyright fee for each copy made. CCC in turn reports aggregate licensing information to plaintiffs, and pays plaintiffs the copyright fees collected, less an agreed amount to compensate CCC for its services. Plaintiff Elsevier will also respond directly to requests for permission to use portions of its materials in course materials.

29. Defendants were well aware of this, as they have an account with the CCC and on at least one occasion in the past they requested permission for a copyrighted work. However, although CEU is apparently engaged in large-scale reproduction and

distribution of Plaintiffs' Works and other copyrighted materials, it has not reported any copying to CCC in recent years and has not obtained any permission for copying from plaintiffs.

30. In September, 2008, a party unaffiliated with any of the plaintiffs decided to test the legality of defendants' operations by ordering from CEU Course Materials that included Plaintiffs' Works. The test orderer gained access to Course Materials by purchasing an "unlimited course package" for 100 hours of online access to Course Materials at a cost of $85.

31. Such Course Materials included copies of Plaintiffs' Works as detailed on Exhibit A hereto. Defendants reproduced such materials without requesting or receiving permission from plaintiffs or the CCC.

32. A sample of the Course Materials accessed are attached hereto as, collectively, Exhibit D. The Course Materials state that CEU obtained written permission via the CCC to reproduce the materials in their entirety with the permission of plaintiffs. However, Defendants have not received permission from plaintiffs or the CCC. nor have they paid any copyright fees for the activities described in this Complaint.

33. Plaintiffs believe, on the basis of the foregoing, that CEU routinely provides Course Materials that include Plaintiffs' Works, in the same manner as described above, and that it has made hundreds or thousands of unauthorized copies of such material.

## COUNTS 1 -12
### Copyright Infringement

34. Plaintiffs reallege and incorporate herein by reference paragraphs 12-33 of this Complaint.

7

35. Plaintiffs have identified at least 12 separate and distinct counts of specific unauthorized copying of which plaintiffs have knowledge. Each instance of unauthorized reproduction and sale of plaintiffs' materials is a separate count in this action.

36. Each infringed work is identified on Exhibit A to this Complaint. From left to right, the columns of Exhibit A state the number of the count, the course for which the item of the plaintiffs' was reproduced by defendants without permission, the title of the material infringed, the chapter or article from the larger book or journal from which such material was copied (if applicable), the author of the material infringed, the date the work was published, the numbers of the pages infringed (if known), and the copyright registration number.

37. Plaintiffs are informed and believe that this unauthorized copying is representative of a much larger pattern of unauthorized copying, which when examined will reveal infringements of numerous other works owned by them, and plaintiffs will amend this Complaint to add such works after discovery has occurred.

38. Defendants have at all times have been fully aware of their obligations under copyright law. Defendants' infringement of plaintiffs' copyrights, including but not limited to those set forth on Exhibit A, has been willful.

39. Defendant CEU is liable as direct infringers of plaintiffs' copyright.

40. Defendant Buckley is liable as a direct infringer and a contributory infringer of plaintiffs' copyrights. As an owner and President of CEU she is responsible, in whole or in part, for establishing the policies and procedures that have led to CEU's unauthorized copying of plaintiffs' books and journals. At all times relevant she has been

in a position to control the infringement described in this Complaint, and has had a direct financial stake in the infringing activity.

41. Plaintiffs have suffered substantial monetary harm from defendants' unauthorized conduct. Plaintiffs will continue to suffer monetary harm if defendants are permitted to continue their infringing activities. In addition, if defendants are permitted to continue copying material from plaintiffs' copyrighted publications, plaintiffs will suffer ongoing injury that cannot be quantified in money damages.

## COUNT 13

### False Advertising – Violation of the Lanham Act

42. Plaintiffs reallege and incorporate herein by reference paragraphs 12-33 of this Complaint.

43. Defendants' statement, that copyrighted material has been obtained with permission from the CCC, is intended to provide defendants' business with a veneer of respectability. It is patently false, at least with respect to Plaintiffs' Works. It therefore constitutes false advertising in violation of Section 43(a) of the Lanham Act, 17 U.S.C. §1125(a).

44. Defendants' false advertising has injured plaintiffs by giving false reassurance to the public that plaintiffs' copyrights would be respected, therefore inducing customers to order articles from plaintiffs' publications including but not limited to Plaintiffs' Works.

## COUNT 14

### False Advertising – Violation of State Law

45. Plaintiffs reallege and incorporate herein by reference paragraphs 12-33 of this Complaint.

46. Defendants' statement, that copyrighted material has been obtained with permission from the copyright holder, is patently false with respect to Plaintiffs' Works. It therefore constitutes false advertising in violation of M.G.L. 266 § 91.

47. Defendants' false advertising has injured plaintiffs by giving false reassurance to the public that plaintiffs' copyrights would be respected, therefore inducing customers to order articles from plaintiffs' publications including but not limited to Plaintiffs' Works.

**WHEREFORE PLAINTIFFS PRAY THAT THIS HONORABLE COURT:**

A. Issue a preliminary order enjoining defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert with them or participation with them, from all further reproduction and distribution by any means or method of contents from the books, journals, or other publications published by plaintiffs or any of them, during the pendency of this litigation, except only such reproduction and distribution as may be authorized by plaintiffs or CCC as plaintiffs' agent and only upon payment of the fees required by them;

B. Issue an order permanently enjoining defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert with them or participation with them, from all further reproduction and distribution by any means or method of contents from the books, journals, or other publications published by plaintiffs or any of them, except only such reproduction and distribution as may be authorized by

plaintiffs or CCC as plaintiffs' agent and only upon payment of the fees required by them;

C. Issue a preliminary order enjoining defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert with them or participation with them, from making any further false statement or representation, explicit or implicit, that they have obtained copyright permission for the reproduction and distribution of any material published by any plaintiff, during the pendency of this litigation;

D. Issue a permanent order enjoining defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert with them or participation with them, from making any further false statement or representation, explicit or implicit, that they have obtained copyright permission for the reproduction and distribution of any material published by any plaintiff;

E. Award plaintiffs all of their direct and consequential damages arising from defendants' willful infringement of copyright, whether direct, contributory or vicarious, or in the alternative statutory damages for such infringement in the maximum amount permitted by law;

F. Award plaintiffs their direct and consequential damages arising from defendants' false advertising, doubled or trebled as permitted by law;

G. Award plaintiffs an accounting of defendants' profits from such infringement and false advertising;

H. Award plaintiffs their reasonable attorneys' fees and costs, as provided in 17 U.S.C. §505, and interest as provided by law; and

I.  Award plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC. and
JOHN WILEY & SONS, INC.,

Plaintiffs,

By their attorneys:

Dated: November 26, 2008

/s/ Amy C. M. Burke
William S. Strong, Esq., BBO #483520
Amy C. M. Burke, Esq.,BBO # 657201
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031
(617) 367-2988 (fax)